**KNAPP MEDICAL CENTER, INC., Appellant,**

v.

**Jeffrey C. GRASS, Appellee.**

**No. 13–12–00099–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

June 6, 2013.

Richard A. Sheehy, Sheehy Serpe & Ware, Houston, Raymond A. Neuer, Sheehy, Ware & Pappas, P.C., Houston, Steven M. Gonzalez, Gerald E. Castillo, Gonzalez & Palacios, L.L.P., McAllen, for Appellant.

Ramon Garcia, Edinburg, Ernst Mitchell Martzen, Dallas, for Appellee.

Before Chief Justice VALDEZ and Justices BENAVIDES and PERKES.

## OPINION

Opinion by Justice BENAVIDES.

Appellant, Knapp Medical Center (KMC), appeals the trial court's denial of its motion for summary judgment in favor of appellee Jeffrey Grass's cross-motion for summary judgment. By four issues, KMC asserts that that trial court erred by:

(1) ruling as a matter of law that it was not exempt from the disclosure requirements for non-profit corporations under the Business Organizations Code;

(2) overruling its objections to an affidavit made by Grass's expert;

(3) ordering an overbroad production of financial documents; and

(4) ordering KMC to post a supersedeas bond without any evidence of damage or loss to Grass on appeal.

We reverse and render.

## I. BACKGROUND

On February 7, 2011, Grass, a licensed Texas attorney from Plano, sent a letter to KMC's chief financial officer, Curtis Haley, and requested numerous documents pursuant to section 22.353 of the Texas Business Organizations Code. *See* TEX. BUS. ORGS. CODE ANN. § 22.353 (West 2011). Grass's request included:

(1) A copy of KMC's by-laws;

(2) Minutes of the Board of Directors meetings for each meeting since 2006;

(3) Audited financials and related reports under Circular A–133 for each tax year since 2006;

(4) Management Representation letters from client to auditors showing contingencies and off balance sheet liabilities;

(5) All Internal Control reports issued by accountants or auditors for each year since 2006;

(6) All federal tax returns (Forms 990 and IRS correspondence) for each tax year since 2006;

(7) Copies of Forms W2 and W3 for each tax year since 2006;

(8) Copies of Forms 1096 and 1099s for each tax year since 2006;

(9) Related Party Transaction Reports required of 501(c)(3) companies since 2006;

(10) Travel Expense Reports required of 501(c)(3) companies since 2006;

(11) Personal Activity Reports required of 501(c)(3) companies since 2006;

(12) Due diligence reports as a result of [KMC's] proposed merger with Valley Baptist Hospital;

(13) Form 1023 (Original application for tax exempt status to the Internal Revenue Service);

(14) List of contractors since 2006;

(15) Comparative studies performed and any and all documents considered by the Compensation Committee in setting the compensation of the Chief Executive Officer and all subsequent bonuses since 2006;

(16) Any and all documents related to insurance policies obtained and maintained by KMC for each year since 2006; and

(17) The identities of any entities or sub-entities formed for the purpose of merging or acquiring other healthcare facilities or for the recruitment of primary care physicians.

KMC resisted Grass's request and cited its exemption from such disclosure under section 22.355(2) of the business organizations code. *See id.* § 22.355(2). KMC then filed a petition for declaratory judgment that requested the trial court to declare KMC exempt from any requirement to produce the documents under section 22.355(2). *See id.* Grass answered the petition and asserted an affirmative defense of estoppel based on the state's public policy that favors public disclosure of financial documents of non-profit corporations.

### A. Grass's Motion for Summary Judgment

Grass also filed a motion for summary judgment. The motion contends, among other things, that KMC was not entitled to the statutory exemption of non-disclosure as a matter of law because KMC set up a sham non-profit corporation known as Knapp Medical Center Foundation ("the Foundation") to circumvent the section 22.353 disclosure requirements. Grass asserts that because KMC receives funds from the Foundation, which solicits funds in excess of $10,000 from the public, KMC is subject to the disclosure requirements of section 22.353(b). Grass contends that the Foundation was a "shell corporation" designed to funnel money to KMC, and this formation should not extend the statutory exemption of non-disclosure to KMC.

Grass attached an affidavit from former paid KMC consultant Patricia C. Fogarty to his motion. In it, Fogarty asserts that to her "recollection," "Knapp Medical Center Foundation both solicited and received more than $10,000 yearly from sources other than its own trustees," and that it was her "professional opinion that [the Foundation] has existed only to support the work of [KMC]" and that to her "knowledge[,] it does not function for any other purpose."

The Texas Medical Association (TMA), with leave granted by the trial court, filed a brief *amicus curiae* in support of Grass's motion for summary judgment.[1] TMA's brief essentially reiterates the arguments contained in Grass's motion and also attaches other supporting evidence, including:

(1) The Foundation's Articles of Incorporation, which states that the Foundation is "organized for the sole benefit of, and the specific purpose of supporting ... of [KMC] in Weslaco ... so long as [KMC] shall qualify as an exempt organization" under the federal Internal Revenue Code; and

---

1. The Texas Medical Association (TMA) contends in its brief that it has an interest in this case through its TMA members on staff at Knapp Medical Center. The TMA also indi-

cated that appellee, Jeffrey Grass, represents members of TMA "who are advocating on behalf of their patients and the community of Weslaco."

(2) Filings with the Texas Secretary of State that show KMC's chief executive officer, James A. Summersett III, served as the registered agent for both KMC and the Foundation.

## B. KMC's Motion for Summary Judgment

By its own motion for summary judgment, KMC contends that it is entitled to protection from disclosure of financial documents as a matter of law under the exemption articulated in section 22.355(2) because KMC and the Foundation are entirely separate non-profit corporations. KMC also contends that TMA's claim that the Foundation is a "sham corporation" is "without evidence or citation to legal authorities." Further, KMC asserts that Grass's argument is unsupported under the relevant statute or stated public policy.

KMC attached the following evidence to support its motion:

(1) An affidavit from KMC CEO James Summersett, who contends, among other things, that KMC: (a) is a not-for-profit corporation organized under the laws of Texas; (b) does not "intend to solicit and receive contributions from the public in an amount exceeding $10,000"; and (c) receives grants from the Foundation for the purchase of specific items of equipment, as directed by the Foundation's board of directors and are not made to support KMC's general operating expenses. Summersett also states that KMC and the Foundation are separate corporations and that

the Foundation solicits, receives, and accepts gifts.

(2) A February 20, 2011 letter to KMC from Grass, in which Grass broadens his initial request for disclosure from his original to include "comparative pay studies" and "all contracts, agreements, resolutions, minutes of meetings, notes and informal memoranda pertaining to any aspect of the total compensation and benefit package(s) of the CEO. . . . "

KMC also filed a response to Grass's motion for summary judgment. The response adopts all of its arguments from its own motion and includes the same exhibits. In its response, KMC also objected to Grass's use of Fogarty's affidavit because her statements were "improperly qualified," under rule 166a. *See* Tex.R. Civ. P. 166a.[2]

## C. The Trial Court's Orders

On August 17, 2011, the trial court held a hearing on each party's respective motion. After taking the matter under advisement, the trial court eventually issued a ruling on October 11, 2011, which granted Grass's motion for summary judgment and denied KMC's. The trial court found that Grass was entitled to summary judgment as a matter of law because KMC was not exempt under the relevant statutes. On the parties' agreement, the Court also ordered an evidentiary hearing as to what documents were subject to public disclosure.

On October 27, 2011, Grass filed a "Revised Document Request" which requested six categories of documents:

2. Grass filed a response KMC's motion for summary judgment in which he incorporated the same arguments and evidence from his own motion for summary judgment. In his response, however, Grass attached a second affidavit signed by Patricia Fogarty which

changed the contested portions of her previous affidavit from "recollections" and "opinions" to positive and direct statements—e.g. "I was aware that [the Foundation] both solicited and received more than $10,000 yearly from sources other than its own trustees."

(1) KMC's financial statements, including balance sheets, statement of cash flows, income statements, and pre-adjusted trial balances;

(2) Management letters from the external auditor;

(3) IRS Forms 990 for all related entities;

(4) Compensation documentation for all employees, including W–2s, 1099, and payroll reports;

(5) Documents about deferred executive compensation, including written plans, contracts with agencies, minutes of the Board of Directors authorizing the arrangement, and any contracts relating to future obligations; and

(6) Any other documentation expressly referred to in Section 22.352(a) as it relates to the financial statement information provided within Subsection (b) and the underlying footnotes to the financial information.

Grass's amended request was supported by an affidavit signed by accountant Steven C. Thompson, Ph.D. In the affidavit, Thompson states that he has personal knowledge of the facts involved in the case, is familiar with Generally Accepted Accounting Principles (GAAP) and Accounting Standards Codification (ASC) standards of accounting, and that all six categories of documents requested "fall within the definition of records, books, and annual reports as expressed by [Texas Business Organizations Code] sections 22.352 and 22.353."

Without waiving its previous exemption argument, KMC filed a response to Grass's request and objected to Thompson's affidavit on the ground that it "tries to invade the province of the Court by interpreting the meaning of the statute." KMC also responded to Thompson's affidavit by an affidavit from its own expert, Rodney Lenfant.

On December 14, 2011, the trial court held a hearing without oral testimony as to what documents KMC was required to disclose. After the hearing, the trial court deferred its ruling. In the interim, Grass filed a supplemental brief which argued that KMC should be allowed to withhold documents pending an appeal if KMC posted a $50,000 supersedeas bond. *See* TEX.R.APP. P. 24.2(a)(3). KMC responded by letter brief, which argued against posting a supersedeas bond because Grass would suffer "no loss or damage while this case is on appeal."

Two days later, the trial court ruled, in relevant part, that:

(1) KMC's objections to Thompson's affidavit, which gave his opinion about what documents fall within the meaning of the public disclosure statute under generally accepted accounting principles be overruled;

(2) Grass's Revised Document Request be granted, in part, and denied, in part;

(3) KMC produce the following documents for calendar years 2008, 2009, 2010:

   a. Internal Revenue Service Forms 990 for 2008 and 2009;

   b. Internal Revenue Service Forms 990 for 2010 after it is prepared and filed;

   c. Documents that trace how grants from the Foundation were used for 2008–2010, including documentation that reflects the sale or disposition of any items purchased by KMC with grants from the Foundation during 2008–2010.

   d. KMC financial statements, including all balance sheets, statement of

cash flows, income statements, and pre-adjusted trial balances;

e. Management letters from the external auditor;

f. Compensation Documentations, with redacted personal information, such as social security numbers; and

g. Deferred executive compensation, including written plans, contracts with agencies, board of directors minutes authorizing such arrangement, and any contracts relating to future obligations;

(4) That KMC post a $25,000.00 supersedeas bond pending appeal; and

(5) That the present orders disposed of all remaining issues of the case and rendered the case final and appealable.

This appeal ensued.[3]

## II. SUMMARY JUDGMENT

By its first issue, KMC asserts that the trial court erred when it ruled that KMC was not exempt from the disclosure requirements of sections 22.353 and 22.355 of the Business Organizations Code as a matter of law.

### A. Standard of Review

We review a trial court's grant of summary judgment de novo. *Mid–Century Ins. Co. of Tex. v. Ademaj,* 243 S.W.3d 618, 621 (Tex.2008). When, as here, both parties moved for summary judgment and the trial court granted one and denied the other, we determine all questions present-ed and render the judgment the trial court should have rendered. *Id.* (citing *Argonaut Ins. Co. v. Baker,* 87 S.W.3d 526, 529 (Tex.2002)); *see FM Props. Op. Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000). On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex. 2000).

Here, both parties rely on statutory provisions to support their respective motions. In general, matters of statutory construction are questions of law. *Argonaut,* 87 S.W.3d at 529; *City of Garland,* 22 S.W.3d at 356. Our objective in construing a statute is to give effect to the Legislature's intent and shall consider at all times, the old law, the evil, and the remedy. Tex. Gov't Code Ann. § 312.005 (West 2005); *see Mid–Century,* 243 S.W.3d at 621. Our interpretation of these statutes begins with their plain meaning, which we derive from the entire act and not just from isolated portions. *Id.* (internal citations omitted). Therefore, we read the statute as a whole and interpret it to give effect to every part.

### B. Statutory Construction and Interpretation

Both parties agree that the relevant statutory provisions involved in this case arise out of Chapter 22 of the Texas Business Organizations Code concerning the regulation of non-profit corporations—specifically, Subchapter H, regarding the public disclosure of financial records and annu-

---

**3.** We note that various *amicus curiae* briefs were filed in this case. *See* Tex.R.App. P. 11. The Texas Medical Association, American Medical Association, Texas State Representative Armando Martinez, and the Objective Watchers of the Legal System (O.W.L.S.) filed a joint amici brief in support of appellee Grass. Additionally, (1) the Texas Hospital Association, Texas Association of Voluntary Hospitals, Texas Organization of Rural & Community Hospitals; (2) Community Hospital Corporation and Memorial Health System of East Texas; and (3) Christus Health, Memorial Hermann Healthcare System, the Methodist Hospital System, Texas Children's Hospital, and Texas Health Resources all filed their respective amici briefs in support of appellant KMC.

al reports of these corporations. *See* Tex. Bus. Orgs.Code Ann. §§ 22.351–.356.

First, we read and construe section 22.353 as a statutory mandate to all domestic non-profit corporations[4] to keep records, books, and annual reports of the non-profit corporation's financial activity on file at the non-profit corporation registered or principal office in Texas for at least three years after the close of the non-profit corporation's fiscal year. *Id.* § 22.353. Further, section 22.353 requires all domestic non-profit corporations to make said records, books, and annual reports, which are held for at least three years after the close of each fiscal year, available to the public for inspection and copying at the corporation's registered or principal office. The statute also allows the corporation to charge reasonable fees for preparing copies of a record or report. *Id.*

Section 22.353 is essentially a re-codification of the now defunct Texas Civil Statutes article 1396–2.23A § C into the Texas Business Organizations Code. *See* Acts 2003, 78th Leg., R.S., ch. 182 § 1, 2003 Tex. Sess. Law. Serv. Ch. 182 (H.B.1156) (West). The legislative intent behind the original provision of the Texas Non–Profit Corporation Act was to open the windows of transparency to non-profit organizations who solicited money from the public by keeping financial records on file and opening those records for public inspection, if so requested. According to the original bill analysis, then-Senator Gene Jones of Harris County authored the legislation as a response to his previously failed attempt to conduct a study of a non-profit drug rehabilitation program in Houston that was rumored to have used funds for investments in night clubs. *See* Senate Comm. on Bus. & Indus., Bill Analysis, Tex. S.B. 857, 65th Leg., R.S. (1977).

We recognize section 22.355, however, as a list of available statutory exemptions for non-profit corporations to the record-keeping and public-disclosure requirements of section 22.353. Because KMC only argues for protection under the statute's second listed exemption, we will only construe that one. *See* Tex. Bus. Orgs.Code Ann. § 22.355(2). Under this exemption, non-profit corporations are not subject to section 22.353 if they do not intend to solicit and receive and do not actually raise or receive during a fiscal year contributions in an amount exceeding $10,000 from a source other than its own membership. *Id.* Like section 22.353, section 22.355 originally appeared in article 1396–2.23A § E of the Texas Civil Statutes.

Since its re-codification in 2003, our research—including the research of the parties to this appeal—reveals no case law which specifically addresses, interprets, or analyzes the current applicable statute. The Austin Court of Appeals, however, construed and analyzed the relevant exemption under its predecessor statute in a case involving similar facts to the one before us today. *See Tex. Appellate Practice & Educ. Res. Ctr. v. Patterson*, 902 S.W.2d 686, 688 (Tex.App.-Austin, 1995, writ denied).

In *Patterson*, state senator Jerry Patterson requested disclosures of the financial records and reports, pursuant to section 22.353's predecessor, article 1396–2.23A § C, from a non-profit corporation ("the Resource Center"), whose stated

---

**4.** A non-profit corporation under this chapter is "a corporation, [in which] no part of the income of which is distributable to a member, director, or officer of the corporation" formed for any lawful purpose not expressly prohibited, including any purpose described in section 2.002 of the business organizations code. *See* Tex. Bus. Orgs.Code Ann. §§ 22.001; 22.051 (West 2011); *see also id.* § 2.002 (West 2011).

purpose was to ensure that death row inmates in Texas had adequate legal counsel. *See id.* at 687. The Resource Center denied Patterson's request, and Patterson responded by filing a petition for writ of mandamus in Travis County district court. After a hearing, the district court determined that the disclosure statute applied to the Resource Center and ordered it to turn over all records, books, and financial reports of its financial activities.

The Resource Center argued on appeal that it was exempt from the disclosure requirements as a matter of law under article 1396–2.23A(E)(2) (present-day section 22.355(2)). The Austin court agreed. While the Resource Center admitted to receiving revenue totaling $3.9 million during the 1993 fiscal year, it argued that the revenues received were not raised or received through "contributions," as articulated in the statute, because "contributions" did not include "grants received . . . [from] state and private foundations." *Id.* at 688. In its opinion, the Austin court cited the original bill analysis and bill hearings, which revealed a "narrowly drawn law" that focused on non-profit corporations which solicited *"funds from the public."* *Id.* at 688–89 (emphasis in original). The court further held that "when a non[-]profit corporation receives grant funding . . . the statute is unnecessary because the terms of the grant and the grantor's oversight provide the means of holding the corporation accountable for the use of grant funds." *Id.*

Because we conclude that the purpose and language of the current section 22.353 exemption is unchanged from its article 1396–2.23A(E)(2) predecessor, we will extend the *Patterson* holding to this case and apply the principles herein.

## C. Discussion

■ Thus, the principal issue in this case is whether, as KMC argues, a non-profit corporation hospital, which makes grant requests and receives grants for specific items to and from a non-profit corporation foundation, whose sole purpose of formation is to provide financial support for said non-profit corporation hospital, is exempt as a matter of law from the public-disclosure requirement articulated the business organizations code. *See id.* §§ 22.353; 22.355. KMC asserts that the evidence establishes, as a matter of law, that it falls under the section 22.355(2) exemption from public disclosure of financial records and reports. We agree.

Grass argues that KMC should not be shielded from the statutory public-disclosure mandates for non-profit corporations because KMC and the Foundation are in essence one in the same because the Foundation is a "straw-man" and "shell corporation" designed solely to funnel money to KMC. The record shows that KMC and the Foundation are separate domestic non-profit corporations. The Foundation was incorporated for "the sole benefit of, and the specific purpose of supporting . . . [KMC]." Furthermore, the record shows that the Foundation "solicits, receives, and accepts gifts" from the public. However, this evidence alone does not support or establish any theory of liability to pierce the corporate veil. *See SSP Partners v. Gladstrong Invs. (USA) Corp.,* 275 S.W.3d 444, 454 (Tex.2009) (citing *Castleberry v. Branscum,* 721 S.W.2d 270, 271–72 (Tex. 1986)). Accordingly, we conclude that based on the record, KMC and the Foundation are separate and distinct domestic non-profit corporations.

■ Next, KMC chief executive officer Summersett's affidavit shows that KMC does not intend to solicit and receive contributions from the public in an amount exceeding $10,000. Summersett's affidavit also indicates that KMC receives grants

from the Foundation to purchase specific equipment and not for general operating expenses. The rule in *Patterson* holds that when a non-profit corporation receives grant funding, section 22.353 (formerly art. 1396–2.23A § C) is not applicable because "the terms of the grantor's oversight provide the means of holding the corporation accountable for the use of grant funds." *Patterson,* 902 S.W.2d at 689. Therefore, we conclude that KMC's grants from the Foundation are not "contributions" as interpreted in section 22.355(2), and, as a result, the section 22.355(2) exemption applies to KMC as a matter of law. *See id.* at 688.

KMC's first issue is sustained.[5]

## III. CONCLUSION

We reverse the trial court's judgment that grants Grass's motion for summary judgment and orders KMC to disclose documents under section 22.353. We render KMC exempt from the statutorily-mandated disclosures of section 22.353.

Dissenting Opinion by Chief Justice ROGELIO VALDEZ.

Dissenting Opinion by Chief Justice VALDEZ.

The question before this Court is whether Knapp Medical Center ("Knapp") is entitled to a declaration that it is exempt from the open records requirements pursuant section 22.355(2) of the Texas Business Organizations Code because it does not directly receive donations from the public in excess of $10,000. Because I disagree with the majority's conclusion that Knapp established as a matter of law that it is exempt pursuant to section 22.355(2), I respectfully dissent. I would

conclude that Knapp is not entitled to a declaratory judgment in this case, and I would affirm the denial of Knapp's motion for summary judgment and the granting of Grass's motion for summary judgment for the reasons set out below.

## I. BACKGROUND

By a letter dated April 7, 2011, Grass requested that Knapp "make its records, books, and reports available for inspection and copying at its principal office located at 1401 E. Eighth Street, Weslaco, Texas 78596 during regular business hours." Grass stated that he was "willing to pay a reasonable fee for said copies." Grass also requested to view and copy documents from Valley Baptist Hospital, Mid Valley Physicians Association, and Knapp Medical Center Foundation (the "Foundation").

On March 28, 2011, Knapp filed a petition for declaratory relief asking the trial court to declare that it is exempt from any requirement to produce the documents requested by Grass pursuant to section 22.353 of the Texas Business Organizations Code. Knapp argued that it is "a not for profit corporation that does not intend to solicit and receive and does not actually raise or receive during a fiscal year contributions from the public in an amount exceeding $10,000." Grass filed a general denial and claimed the affirmative defense of estoppel based on public policy. Grass specifically argued that Knapp should be estopped from claiming the benefits of the exemption because it used a separate entity, the Foundation, to "solicit and receive funds over $10,000 from members of the public."

Grass then filed his motion for summary judgment. In his motion, Grass asserted

---

**5.** Because our ruling on KMC's first issue is dispositive, we need not address KMC's remaining issues. *See* TEX.R.APP. P. 47.1.

that Knapp admitted that the Foundation "solicits and receives donations in from the public, implying that [the Foundation] would be subject to the recordkeeping and disclosure requirements of [section 22.353]." Grass stated that pursuant to Knapp's publicly available IRS form 990, the Foundation is "operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of" Knapp. He further stated that the Foundation had provided $321,600 of support to Knapp in 2008.[1] Grass attached to his motion for summary judgment, an IRS form showing that the Foundation gave Knapp $321,600 in 2008.

Knapp filed an amended petition for declaratory judgment on July 19, 2011, again requesting a declaration that it is exempt from disclosure requirements pursuant to section 22.353. Knapp then requested, in the alternative, that if the trial court found that Knapp was not exempt, for the trial court to declare which documents must be produced because Grass's request was "overbroad, vague, burdensome, and not authorized by, or subject to, the statute." Knapp then filed its motion for summary judgment on the basis that "the evidence shows that [it] falls within [the] statutory exemption" and that there was no basis in the statute for Grass's estoppel argument. To its motion for summary judgment, Knapp attached an affidavit from James Summersett III, stating that Knapp "does not intend to solicit and receive contributions from the public in an amount exceeding $10,000." Summersett averred that the Foundation "does not own the assets, or control the operations of Knapp" and Knapp "does not own the assets, or control the operations" of the Foundation.

In his first amended answer and special exception, Grass filed a general denial and

invoked the affirmative defense of estoppel based on public policy. Grass then responded to Knapp's amended pleading by specially excepting to its claims that some of the requested documents are confidential and that his request was overbroad, vague, burdensome, and not authorized by, or subject to, the statute. Knapp then filed its IRS tax form 990 with the trial court.

The trial court denied Knapp's motion for summary judgment and granted Grass's motion for summary judgment. This appeal ensued.

## II. STANDARD OF REVIEW

In a traditional motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). If the movant's motion and summary judgment proof facially establish a right to judgment as a matter of law, the burden shifts to the non-movant to raise a material fact issue sufficient to defeat summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex.App.-Austin 2000, no pet.); *HBO, A Div. of Time Warner Entm't. Co., L.P. v. Harrison*, 983 S.W.2d 31, 35 (Tex.App.-Houston [14th Dist.] 1998, no pet.). In deciding whether a disputed material fact issue precludes summary judgment, we resolve every reasonable inference in favor of the non-movant and take all evidence favorable to it as true. *See Nixon*, 690 S.W.2d at 548–49; *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex.App.-Houston [14th Dist.] 1992, writ denied). If the defendant

---

1. The trial court granted Knapp Medical Center's objections to an affidavit written by Patricia Fogarty that Grass attached to his motion for summary judgment.

relies on an affirmative defense to defeat summary judgment, it must come forward with evidence sufficient to raise a genuine issue of material fact on each element of the defense. *Sani v. Powell,* 153 S.W.3d 736, 740 (Tex.App.-Dallas 2005, pet. denied) (citing *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979)). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied).

When a plaintiff moves for summary judgment, it must prove all elements of its cause of action as a matter of law. Tex.R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). A defendant who conclusively negates at least one of the essential elements of a plaintiff's cause of action is entitled to a summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex.2004). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). Once a defendant establishes its right to summary judgment, the burden then shifts to the plaintiff to come forward with competent controverting summary judgment evidence raising a genuine issue of material fact. *Centeq Realty, Inc.,* 899 S.W.2d at 197. When both sides have moved for summary judgment and one motion is granted and one denied, we determine all questions presented and render the judgment the trial court should have rendered. *Lubbock County v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 583 (Tex.2002).

## III. Declaratory Relief

The Declaratory Judgments Act provides a person "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise with the right to have a court determine" any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder. Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a) (West 2008). Section 37.002 provides that the statute is to be liberally construed and administered. *Id.* § 37.002(b) (West 2008). The purpose of the declaratory action is to establish existing rights, status, or other legal relationships. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 357 (Tex.2000).

A declaratory judgment is applicable whenever there is a justiciable controversy existing "as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex.1995). A trial court has discretion to enter a declaratory judgment as long as it will serve a useful purpose or will terminate the controversy between the parties. *Bright v. Addison,* 171 S.W.3d 588, 606 (Tex.App.-Dallas 2005, pet. denied).

## IV. Section 22.355(2)

Section 22.353 of the Texas Business Organizations Code requires a non-profit corporation to keep records, books, and annual reports of the non-profit corporation's financial activity and to make these records available to the public for its inspection and copying at the corporation's principal office. *See* Tex. Bus. Org.Code Ann. § 22.353. As stated by the majority, section 22.353 is a re-codification of article 1396–2.23A section C of the Texas Civil Statutes. *See* Acts 2003, 78th Leg., R.S.,

ch. 182 § 1, 2003 Tex. Sess. Law. Serv. Ch. 182 (H.B.1156) (West). The intent of article 1396–2.23A, as stated by the Austin Court of Appeals in *Texas Appellate Practice & Educ. Resource Ctr. v. Patterson,* 902 S.W.2d 686, 689 (Tex.App.-Austin 1995, writ denied) and the Texas Supreme Court in *In re Bay Area Citizens Against Lawsuit Abuse,* 982 S.W.2d 371, 381 (Tex. 1998), was "to remedy a specific problem: the lack of accountability regarding a non-profit corporation's use of funds solicited from the public."

Section 22.355(2) states that "a corporation that does not intend to solicit and receive and does not actually raise or receive during a fiscal year contributions in an amount exceeding $10,000 from a source other than its own membership" is exempt from keeping records of its financial documents and making those records available to the public for inspection and copying. *See id.* § 22.355(2). The predecessor to section 22.355(2) exempted "a corporation which [did] not intend to solicit and receive and [did] not actually raise or receive contributions from sources other than its own membership in excess of $ 10,000 during a fiscal year" from having to disclose its financial records to the public. *See Patterson,* 902 S.W.2d at 687.

## V. PATTERSON

In *Patterson,* the Texas Appellate Practice and Educational Resource Center (the "Resource Center") appealed from an order granting a writ of mandamus ordering it to make available all of its records, books, and annual reports of financial activity for inspection and copying to Jerry Patterson. *Id.* at 686–87. The Resource Center argued that because it did not receive "contributions," it was exempt from providing its financial records to the public for inspection and copying. *Id.* at 688.

The Austin Court of Appeals determined that its disposition of the case was dependent on the meaning of the word "contributions" as used in the statute. *Id.* The court concluded that the statute was ambiguous, requiring it to ascertain the legislative intent in enacting the statute. *Id.* The court noted, in pertinent part, that the background portion of the history section of the bill analysis stated it was "a major recommendation from the study" that non-profit organizations that solicit funds from the public should be required "to keep adequate records showing how the funds were actually being used." *Id.* "The bill analysis also reveal[ed] the purpose of the bill" was to require non-profit corporations "soliciting funds from the public to keep certain financial records." *Id.*

The court then determined that the intent of the statute was "to remedy a specific problem: the lack of accountability regarding a non-profit corporation's use of funds solicited from the public." *Id.* at 689; *see In re Bay Area Citizens Against Lawsuit Abuse,* 982 S.W.2d 371, 381 (Tex. 1998). The court concluded that the legislative purpose was to make non-profit corporations accountable for donations solicited from the public and "[i]n absence of a problem, there is no need for a remedy." *Id.* The court then concluded that "[w]hen a non[-]profit corporation received grant funding, i.e., from the federal government or from the IOLTA ('Interest on Lawyer's Trust Accounts') fund of the Texas Bar Association, the statute is unnecessary because the terms of the grant and the grantor's oversight provide the means of holding the corporation accountable for the use of grant funds." *Id.* Based on its interpretation of the legislative intent behind the public disclosure statute, the court of appeals held that "the term 'contributions' means funds solicited from the general public and does not cover grant

funding or donations of in-kind services." *Id.*

## VI. DISCUSSION

The majority acknowledges that the *Patterson* court reasoned that the legislative intent behind the statute was to provide transparency, and the majority also agrees with *Patterson* that the word "contributions" does not include grant funding from entities with the power of grant oversight providing "the means of holding the corporation accountable for the use of grant funds." *Id.* I, too, agree that transparency was the legislature's intent when it enacted section 22.353 and that when a non-profit receives grants from grantors with the power to review how those grant funds are used, public disclosure is unnecessary. *See id.* However, I disagree with the majority's conclusion that in this case, Knapp does not receive "contributions" because "the grantor's oversight provides the means of holding the corporation accountable for the use of the grant finds."

In this case, the summary judgment evidence shows that the Foundation receives money from the public and then transfers that money to Knapp. In its tax records, Knapp stated that it "earns revenues by providing inpatient, outpatient, emergency room, and physician services to patients living in the mid-Rio Grande Valley of South Texas" and that the Foundation "is a fund-raising organization for the medical center [and] the medical center is the sole member of the Foundation." In its "Schedule O (Form 990)," the Foundation provided supplementation to its tax form stating, among other things, that "Knapp Medical Center's Board approves all directors elected by [the Foundation's] Board and any changes made to the organ-

izations bylaws." The Schedule O Form also stated that "Knapp Medical Center is the sole member of [the Foundation]." Knapp provided no summary judgment evidence regarding how the Foundation provided oversight of the money given to Knapp or how the Foundation held Knapp accountable for the use of the grant funds.

The facts of this case are distinguishable from the facts in *Patterson*. In *Patterson*, there was no evidence presented that the non-profit corporation had any control over who would be elected as directors of the entities providing the grants or that the non-profit corporation had the ability to approve or disapprove any changes made to the granting entities' bylaws. Moreover, the grants in *Patterson* were given to the non-profit corporation by entities that were completely separate from it and that were not created to benefit its sole member—the non-profit corporation. Thus, I would conclude that unlike the non-profit corporation in *Patterson*, which accepted grants from entirely separate and unrelated entities, Knapp has found a way to circumvent the legislature's intent of transparency by receiving funds from the Foundation—an entity created for the sole purpose of providing public funding to Knapp.[2]

Under the principles announced in *Patterson*, to meet its summary judgment burden, Knapp was required to show that it does not receive "contributions." In order to do so, Knapp had the burden of showing that it did not receive money from the public. Here, there was no evidence presented that the Foundation provided oversight of the money it collected from the public and then gave to Knapp. Therefore, I would conclude that the trial court

**2.** The entities in *Patterson* were not created for the sole purpose of providing grants to the non-profit corporation in that case.

correctly denied summary judgment declaring that Knapp is exempt from section 22.353. For the same reason, the trial court properly granted Grass's motion for summary judgment requesting that the trial court deny declaratory relief to Knapp.

In *Patterson*, the court did not focus on whether the grants came from related or unrelated entities. In fact, there is no discussion regarding "piercing the corporate veil" in *Patterson*. Instead, the focus of the *Patterson* court was on the issue of transparency and whether the grantors in that case had oversight of the funds given to the non-profit corporation. The court concluded that because there was oversight, the statute requiring disclosure of financial records to the public was unnecessary. Here, I would conclude that there is no evidence of oversight. Thus, I also disagree with the majority's conclusion that we must find that the corporate veil has been pierced before determining whether Knapp received "contributions." However, assuming that piercing the corporate veil is required in this case, I would find that there is evidence that the corporate veil should be pierced or at the very least that a fact issue has been raised in that regard.

There are various ways that courts find piercing of the corporate veil, such as in the theory of alter ego. *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986); *see Gibraltar Sav. v. LDBrinkman Corp.,* 860 F.2d 1275, 1293 (5th Cir.1988) (citing *id.*). Under the alter ego theory, the corporation is organized and operated as a mere tool or business conduit of another

corporation. *Castleberry,* 721 S.W.2d at 272; *see Gibraltar Sav.,* 860 F.2d at 1293. The majority concludes that because the Foundation and Knapp are separate entities, the corporate veil cannot be pierced. I agree that the corporate veil in this case cannot be pierced under an alter ego theory. However, I do not agree with the majority that Grass claimed that the Foundation is Knapp's alter ego.

Instead, it appears to me that Grass's claim is that "a sham to perpetrate a fraud" has occurred because the Foundation is a sham non-profit organization set up to circumvent section 22.353.[3] *See Castleberry v,* 721 S.W.2d at 272. A sham to perpetrate a fraud can be found even when two entities have observed all corporate formalities of separateness, as the majority has found in this case. *See id.* at 271–72. This theory may be applied when a corporation wishes to circumvent a statute, as alleged here. *See id.* at 272. When the theory is that a sham to perpetrate a fraud has occurred, "neither fraud nor an intent to defraud need be shown as a prerequisite to disregarding the corporate entity." *Id.* The party claiming that the corporation is perpetrating a fraud need only show that the separate corporation's existence would bring about an inequitable result. *Id.* at 273. The question of injustice or inequity is a question of fact and common sense. *Id.* Based on the evidence presented, I would conclude as a matter of law that a separate entity, the Foundation, was created in order to allow Knapp to indirectly solicit funds from the public; thus, circumventing the legislative intent of section 22.353.[4] For these rea-

---

**3.** Because disregarding the corporate fiction is an equitable doctrine, Texas takes a flexible fact-specific approach focusing on equity.

*Castleberry v. Branscum,* 721 S.W.2d 270, 273 (Tex.1986).

**4.** Grass also claimed estoppel as a defense in

sons, I respectfully dissent.[5]

his pleading; Knapp did not address this defense in its motion for summary judgment.

**5.** I am of the opinion that at the very least, the summary judgment evidence creates a fact issue regarding whether a sham to perpetrate a fraud has occurred. *Castleberry*, 721 S.W.2d at 273. Thus, the trial court properly denied Knapp's motion for summary judgment on that ground.